F. H. FRANKS v. J. H. LOCKEY AND H. E. THURSTON.

*Setting aside Judgment.*

The defendants were partners, and as such, were sued. There was no personal service of the writ on the defendant L., who resided out of the state, and had no knowledge of the suit until after judgment was rendered therein; but the defendant T., who resided in the state, and had the management of the partnership business, was personally served, and employed counsel to appear for both defendants, who appeared accordingly, and consented to judgment against both defendants, which was rendered, and execution issued. At the next term, said judgment was sued. At a subsequent term, the court, on motion of L. for that purpose, vacated said judgment as to L., and ordered the case brought forward upon the docket for trial. *Held,* that the court had the legal power so to do.

THIS was a petition by the defendant, Lockey, to vacate as to him, a judgment rendered in this suit against the defendants, at the April term, 1868, and to bring the case forward upon the docket for trial as to him. The facts were these :

In January, 1867, the defendants entered into articles of copartnership under the name of H. E. Thurston & Co. Lockey did not give his personal attention to the business, but resided in Massachusetts. Thurston resided in Sunderland, Vt., where the partnership business was carried on, and personally superintended the business. The partnership owned several buildings there, among which was a hotel, which they used for a boarding-house for their help, and for entertaining travelers, they having a license for that purpose. Tuttle & Reed, liquor-dealers in New Haven, Conn., sold to said Thurston a quantity of liquors, which Thurston bought upon the credit of the firm, and sold in said hotel, contrary to law. Lockey had no knowledge of said purchase and sale of the liquor. On the 2d of September, 1867, Thurston gave Tuttle & Reed a check of $2,000 for said liquors, signed by the firm name of H. E. Thurston & Co., and payable to said Tuttle & Reed, or order. Lockey had no knowledge of the giving of said check. The last of September, 1867, Lockey went to Sunderland, and found the business in such condition that he commenced a suit in chancery against Thurston for the dissolution of the partnership, procured the appointment of a receiver, and got said Thurston enjoined from further conducting the business, or in any way intermeddling therewith, which suit was entered at the December term, in Bennington county, and continued to the June term; meanwhile they made a final settlement of their partnership busi-

ness, and Thurston went out of the business, and Lockey assumed and carried it on. On the 8th of November, 1867, the plaintiff brought this suit upon said check, as indorsee thereof, against the defendants as co-partners, returnable to the April term, 1868. The writ was served on the same day by making a nominal attachment, and by delivering a copy thereof to said Thurston, and leaving a copy with him for said Lockey. Thurston, without the knowledge of Lockey, employed Nathan Hall, an attorney of the court, to appear in said suit for him and the said Lockey, who appeared accordingly for both the defendants. Charles N. Davenport, an attorney of the court, also entered a general appearance in said suit, for the defendants, which he did by reason of a general retainer which he had long prior thereto received from the said Thurston. At the term last aforesaid, judgment was rendered in said suit for the plaintiff for the amount of said check and costs, by the consent of said Hall, and execution issued. At the September term of said court, 1868, a suit was brought upon said judgment and certain parties trusteed, and a copy of the writ was left with one of the trustees for said Lockey. The first knowledge Lockey ever had of the existence of this original suit, or of said judgment, was when the trustee handed him said copy.

Upon the foregoing facts, the court, at the September term, 1870, BARRETT, J., presiding, vacated said judgment as to Lockey, and ordered the case brought forward for trial; to which 'the plaintiff excepted. At the September term, 1872, final judgment was rendered in the case for the defendant Lockey, upon the verdict of a jury.

*Clark & Haskins*, for the plaintiff.

We understand the rule of law to be well settled by repeated adjudications, that a co-defendant, being a co-partner, or former co-partner, and a co-contractor, has authority to employ counsel to appear, not only for himself, but for his co-defendant; and that a general appearance entered by the attorney, will bind all. *Scott* v. *Larkin*, 13 Vt. 112; *Bennett et al.* v. *Stickney*, 17 Vt. 531; *Spaulding et al.* v. *Swift*, 18 Vt. 214; *Abbott & Co.* v. *Dutton*, 44 Vt. 546. The case of *Whitney et al.* v. *Silver*, 22 Vt. 634, does not in fact controvert the position we have here taken. In that case, the question of the right of one co-defendant to employ

an attorney for both was not in issue.  There was no attorney employed by either defendant, and none, in fact appeared.

But if, notwithstanding the decisions above cited, this court should hold that, under the circumstances of this case, Thurston had no authority to employ counsel to appear in behalf of Lockey, we then insist that the appearance of Hall and Davenport, as stated, is conclusive upon Lockey,—certainly as between him and the plaintiff.  We contend that the well established rule of law is, that when an attorney of record enters an appearance either to prosecute or defend a suit, without the knowledge or consent of the party, and even though the party has had no notice, a judgment rendered under such circumstances, in the absence of fraud or collusion, is absolutely binding on the party, and the court has no power for such a cause, to set aside the judgment; but that the party prejudiced thereby must seek his remedy on the attorney.  *St. Albans et als.* v. *Bush,* 4 Vt. 58 ; *Newcomb et al.* v. *Peck,* 17 Vt. 302 ; *Spaulding et al.* v. *Swift,* 18 Vt. 214 ; *Abbott & Co.* v. *Dutton,* 44 Vt. 546.

Again, we insist that, if the court below had the authority to vacate its judgment previously rendered, and to restore the case to the docket for trial, there was error in this,—that the proceedings had were irregular. · The case shows that the judgment was rendered against the complainant Lockey and Thurston, jointly. Therefore, if it was invalid or irregular as to one, it was equally so as to the other.  And if from any irregularity in the former proceedings, the court below were authorized to vacate that judgment, we contend they could only do it at the instance of both defendants.  A judgment thus rendered must either stand or fall *in toto.*  It cannot be vacated as to one, and left to stand in full force and effect as to the other.  *Titlemore* v. *Wainwright,* 16 Vt. 173 ; *Whitney et al.* v. *Silver,* 22 Vt. 634 ; *Starbird et als.* v. *Moore,* 21 Vt. 529 ; *Herrick* v. *Orange Co. Bank,* 27 Vt. 584. The foregoing are all cases arising under the writ of *audita querela,* the effect of which writ, the relief sought to be obtained, and the principles involved, are somewhat analagous to those in proceedings of this nature, and, to a certain extent, are concurrent remedies.  *Porter* v. *Vaughn,* 24 Vt. 211.

It may be urged that the granting or denying of the prayer of the petitioner, was a matter resting entirely within the discretion of the court below ; hence their proceedings are not subject to revision by this court. We do not question but the county court has the right, within certain limits, to order its records and judgments corrected, and perhaps, for sufficient reasons, to vacate its judgments, and open the case for further proceedings. Yet, this power, if it exists, must be exercised within the pale of well established rules. And while, perhaps, they have the power to correct an error *in fact*, which has become a part of their records, still, we insist they have no right to blot out, to erase, or in any manner to interfere with, a record made up in accordance with the fact.

Again, the case shows that the original judgment of the county court was in all respects regular and correct, both as to the issuing and service of the writ, the proceedings of the court, and the doings of the clerk in making up the judgment, and in the issuing of execution. This being so, the court below had no power, discretionary or otherwise, to interfere in the premises. *Smith et al.* v. *Howard*, 41 Vt. 74.

*C. N. Davenport*, for the defendant Lockey.

Every court must, from necessity, have a revisory power over its own proceedings and records. Errors are committed, accidents and mistakes happen, in the best regulated courts. Frauds are perpetrated, and the judgments of the court sometimes made the instrument of wrong and injustice. In the language of HALL, J., " It is a power incident to courts, to inquire into the correctness of their own proceedings, to correct their records according to the truth, if erroneously made, or to relieve a party against the unjust operations of a record, on ascertaining by a direct inquiry into the matter that the record ought not to have been so made. This proceeding is usually on motion founded on affidavits and notice, and the power is exercised in a summary way whenever the court in its sound discretion considers that the furtherance of justice requires it." *Scott* v. *Stewart*, 5 Vt. 57 ; *Adams et al.* v. *Howard*, 14 Vt. 560 ; *Mosseaux* v. *Brigham*, 19 Vt. 457, 460 ; *Beckwith*

v. *Middlesex*, 20 Vt. 593; *Foster* v. *Austin*, 33 Vt. 615, 617; *Montgomery* v. *Vinton*, 37 Vt. 514; *Smith et al.* v. *Howard*, 41 Vt. 74. In the case last cited, PECK, J., says: "There is no doubt but the county court, within certain limits, has such power over its records and judgments as to warrant the court in ordering them corrected, and, if necessary, for sufficient reasons, to order a case to be brought forward after final judgment, and vacate that judgment and open the case for further proceedings."

It will be observed that no third person, like bail, or receiptor, could be injured by the exercise of the court's discretion in opening this case for trial. It only operated to deprive the plaintiff of the advantage of a collusive judgment, to which he was not, as the sequel proved, entitled.

The power to vacate a judgment and open a case for trial, is a discretionary power, and its exercise in a proper case is not subject to revision on exceptions. *Mosseaux* v. *Brigham*, 19 Vt. 460; *Downs et al.* v. *Read*, 32 Vt. 785; *Smith et al.* v. *Howard*, *supra*.

The opinion of the court was delivered by

PECK, J. The only question is whether the county court, upon the facts stated, legally had the power to vacate the judgment as to the defendant Lockey on his petition, and bring the case forward for trial as to him. We think the court had such power. It is objected by the plaintiff that if the county court had such power, the proceeding was irregular in this, that if the judgment was vacated as to the defendant Lockey, it should have been vacated also as to the defendant Thurston. No such question is presented by the exceptions, as it does not appear that either the plaintiff Franks, or the defendant Thurston, asked to have the judgment vacated as to Thurston, if vacated as to Lockey. The cause for vacating the judgment did not extend to Thurston.

Exceptions overruled and judgment affirmed.